## HOUSE *v.* STATE, 41 Miss. R., 737.

### RETAILING.

Statutes are not considered repealed by implication, unless the repugnancy between the provisions of the new and former statute be plain and irreconcilable.

Statutes relating to the same subject-matter must be considered together, and must be so construed as to give force and effect to all, if they be not conflicting.

In order to derive a power by implication, it must appear that the power thus sought to be implied is so necessary to the enjoyment of some specially-granted right, that without it, that right must fail.

By the amendment of the charter of the city of Holly Springs, passed November 19th, 1857, the mayor and aldermen have the exclusive right to grant license to retail vinous and spirituous liquors within the corporate limits. This power must be exercised in accordance with the requirements of the Rev. Code, 197-8, art. 4; and a grant of license without the petition of a majority of the legal voters resident within the city, is null and void.

Error to Marshall circuit court.    CLAYTON, J.

The opinion of the court contains a sufficient statement of the facts of the case.

*Featherton, Harris & Watson*, for plaintiff in error,

Insisted that the Rev. Code, 197, regulating the grant of license to retail, and which requires the applicant to be recommended by a majority of the legal voters of the town, city, or police beat, as a suitable person, &c., does not apply to this case. That this general act has been repealed by a subsequent act, at least in its application to Holly Springs. The act of November 19th, 1857, amendatory of the several acts incorporating the city of Holly Springs, repeals this general act in its application to this city. See pamphlet acts of 1857, p. 91. The 29th section of the act gives the mayor and aldermen of Holly Springs the *exclusive right* to grant licenses for the sale of vinous and spirituous liquors within the corporate limits of the town, and for a period of more or less than one year, and on such terms and restrictions as the mayor and aldermen may prescribe. · See sec. 29 of this act, page 96.

Here the *exclusive right is given* to the mayor and aldermen to license retail houses in the city of Holly Springs, for a longer or shorter period than one year, and on such terms and under such restrictions as they may prescribe. Everything on this subject is left to the discretion of the corporate authorities. They prescribe the terms on which licenses are to be granted, and impose the restrictions deemed necessary. The right, then, must be untrammeled and unrestricted in the hands of the corporate authorities. It cannot be clogged, encumbered, or in any way controlled or restricted by the provisions of the general law previously passed, requiring the applicant for license to be recommended by a majority of the legal voters, &c. The terms and provisions of this law are directly in conflict with the law insisted and relied on by the state. This law gives the mayor and aldermen the right to prescribe the terms on which licenses are to be granted, and to impose all necessary restrictions. The general law prescribes the terms and imposes the restrictions itself, and thus settles all questions which are left to the corporate authorities by the act of November 19th, 1867. Both laws cannot prevail; they are repugnant and irreconcilable. The terms employed by the legislature in the act of November 19th, 1857, show very clearly that it was the intention of the legislative mind to repeal all laws on the subject of licensing retail houses in the city of Holly Springs, and to vest all power on that subject in the mayor and aldermen of that city, to be exercised within its corporate limits. The terms employed, "*exclusive right,*" are not without judicial interpretation. These terms are defined in the case of Ogden v. Gibbons, 5 Johns. Ch. R., 159, 160, 161, 162. See also Servis v. Beatty, 32 Miss., 84, 85. Indeed, there can be no doubt but that, according to the well-established rules of construction, the general law on the subject of retailing, which requires applicants for license to be recommended by a majority of the legal voters, &c., is repealed by the special and subsequent law of November 19th, 1857, so far as the city of Holly Springs is concerned. "It is well settled that a subsequent statute, which is clearly repugnant to a prior one, necessarily repeals the former one, although it does not do so in terms; and even if the latter statute be not repugnant in its

provisions to the prior one, yet if the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the original act." Sedgwick on Stat. and Const. Law, 124, 125, 126. The 29th section of the act of November 19th, 1857, was intended to prescribe the only rule on the subject of granting licenses to retail in the city of Holly Springs. The legislature evidently intended, when they used the term " exclusive right " to license, &c., to vest in the corporation of Holly Springs all power over this subject, to remove all obstacles, to repeal all laws in conflict with this 29th section of the act of 1857. The license granted to the plaintiff in error by the mayor and aldermen of Holly Springs, on the 2d of August, 1866, is therefore valid, and furnished the defendant with a good defense to this indictment.

*C. E. Hooker*, attorney general.

It is well settled that all statutes must be construed in connection with previous laws in relation to the same subject-matter, and that all such acts are to be taken together, as if they were one law.

Another well-settled rule is, that where rights are infringed and fundamental principles overthrown, and the general principles of the law departed from, a legislative intention to repeal a former law must be expressed with great clearness, and not left to doubtful implication. The subsequent act of 1857 does not abrogate the general provisions of the license law of the state, inasmuch as there is no repeal in terms, nor by necessary implication or intent, nor is there any negative of the rights, duties, and powers conferred upon corporate cities and towns by the general law. See 1 Black. Com., 89; 4 How. S. C. R., 53, 54; 1 Wisc., 513. Statutes are not considered to be repealed by implication unless the repugnancy between the new provisions and the former statute be plain and unavoidable. Planters' Bank v. State, 6 S. & M., 632. See also White v. Johnson, 30 Miss., 583; Mayor and Aldermen of the City of Jackson v. Bowman, 39 Miss., 671.

It is apparent that it was the purpose and intent of the legislature to vary and change the license laws, as to the city of

Holly Springs, to this extent, and to this extent only, that the corporate authorities of said city should have power to license "for a longer period· than one year; under such restrictions as they saw fit to impose." But by no means was it intended to invest them with· absolute discretion to disregard the will of·the majority of the · voters of said city as to who was the proper person to receive license, and much less did the legislature intend to clothe the·mayor·and board·of aldermen of the city of Holly Springs with authority *to sell a monopoly* of .the liquor trade to whom they might· see ·proper, in contravention, and, indeed, in direct opposition to the general policy which prevailed throughout the state of Mississippi.

SHACKELFORD, C. J.: ·

The plaintiff in error was tried upon· an indictment for selling vinous and spirituous liquors in·a less quantity than one gallon (not being a druggist, and without license therefor) within the limits of the corporation of the city of Holly Springs, found guilty, ·and sentenced by· the court. Motion for a new trial overruled, and exceptions taken to · the ruling, and allowed by the court.

This writ of error is prosecuted ·to reverse this judgment.

There was an exception taken .to the ruling of the court, in granting the only instruction offered by the state, which is made the ground for the first assignment of·error : "That the court below improperly instructed the jury,. at the instance .of the state."

We shall only notice this ground·of error, as·the whole case turns upon this instruction. ·

The selling of the liquor, as charged, was proven and ad-mitted. ·

The selling was justified by the plaintiff in error.

· · The plaintiff in error read·to the jury a license issued to the plaintiff in error, John Bradley, and William C. Dunn·(partners ·of plaintiff in error), on the 2d day of·August, A. D. 1866, by the mayor and aldermen of the city of Holly Springs, granting said parties the "*exclusive right*" to sell vinous and spirituous liquors within the corporate limits of. the city of

Holly Springs, for the term of *seven years* from the date thereof.

The license was issued to the plaintiff in error and his partners, in consideration of their undertaking to build a first-class hotel in the city of Holly Springs by the 31st day of December, 1867. This license was granted on the petition of the said J. J. House, John Bradley, and William C. Dunn, none of the citizens or legal voters of the city of Holly Springs joining in the said petition.

It was admitted that the petition was acted upon without lying over one month for the coming in of counter petitions, &c.

The plaintiff in error introduced and read to the jury a license issued to John Bradley, —— Phillips, and —— Farrington, by the mayor and aldermen of Holly Springs, dated the 18th of January, A. D. 1858, in consideration of said parties agreeing to erect a first-class hotel in said city by the first day of July, A. D. 1859.

It also appeared in said license last introduced that the petition for the grant of the same was *signed by a majority* of the legal voters of the city of Holly Springs, and that the petition was filed and laid over for consideration for one month, and the reception of counter petitions, before being acted upon.

This license to Bradley, Phillips and Farrington to sell vinous and spirituous liquors was for the term of ten years, the "exclusive right" secured to them "as a personal privilege, not transferable to another." John Bradley, one of the partners of plaintiff, is the same person named to whom the first license was issued. Bond offered also in evidence and read to the jury is conditioned according to the requisitions of the statute of Rev. Code, 197, 198, regulating the retailing of spirituous liquors in this state.

The instruction asked by the state, and given by the court to the jury, with reference to the foregoing evidence, and excepted to by the plaintiff in error, presents really the whole question for determination by the court. It presents fully the question of the validity of the license of 2d August, 1866, relied upon by the plaintiff in error as his defense to the indictment.

The instruction is in these words: "Unless the jury believe, from the evidence, that a majority of the legal voters of the city of Holly Springs petitioned the mayor and aldermen to grant to Bradley, House & Dunn a license to retail vinous and spirituous liquors for a term of seven years, recommending them to be of good reputation and sober, and suitable persons to receive such license, and that said petition was presented to said board and filed, and lay over one month for consideration, and for counter-petitions—that said license, so granted by said board of mayor and aldermen, of the 2d of August, 1866, would not authorize the sale by defendant of spirituous liquors in less quantities than one gallon in the city of Holly Springs, unless the jury believe that said liquor was sold by defendant as a druggist, and for medicinal or culinary purposes, and none other."

It is contended by the counsel for the plaintiff in error, with great earnestness, that "section 29," of the "act to amend the several acts heretofore passed by the legislature, incorporating the town of Holly Springs, in Marshall county," which is in these words:

"SEC. 29. The mayor and aldermen of said city shall have the exclusive right to grant licenses for the sale of spirituous and vinous liquors within the corporate limits of the same, and such licenses may be granted for a period less or more than one year, under such restrictions and terms as may be prescribed". —passed 19th of November, 1857—repeals so much of the general statutes regulating the sale of vinous and spirituous liquors in Rev. Code, pp. 197–8, as is prescribed in Art. 4 of said statute.

That this section 29, of the act of November, 1857, "gives all power over this subject of licensing retail houses, within the corporate limits of Holly Springs, to the mayor and aldermen; *that everything is left to the discretion of the corporate authorities.*"

"They prescribe the terms on which licenses are to be granted, and impose the restrictions deemed necessary. This right must be therefore untrammeled and irresistible in the hands of the corporate authorities."

We cannot recognize such power in the mayor and aldermen

of Holly Springs, as is given to them by the construction placed upon "section 29," by the distinguished counsel for plaintiff in error.

In construing this section 29, in question, if attainable, we should consider the reasons or considerations moving the legislature *at the time* of the passage of the act; and of the laws in force at that time.

By the Revised Code of 1857, p. 197, art. 2, "the boards of county police had the exclusive right to grant and issue licenses in their respective counties, *and in the towns of the state* where the inhabitants of the same did not reach the number of two thousand. That in towns where the population amounted to two thousand or more, if incorporated, the mayor and aldermen of said towns had the exclusive privilege of issuing such licenses."

If the town of Holly Springs had, at the time of the passage of the act amending its charter, on the 19th of November, 1867, two thousand inhabitants within its corporate limits, is it reasonable to suppose the legislature would have passed such an act? By the general law of the Code (p. 197) they had that power, being an incorporated town, without any special legislation on the subject.

No necessity existed for such legislation, if there were two thousand inhabitants within the corporate limits of Holly Springs.

The presumption is, that at the passage of the act in question, the town of Holly Springs had not two thousand inhabitants within its corporate limits, and that the act was passed as a special privilege and favor to the people of that town, allowing them to regulate the issuance of licenses for the sale or retailing of vinous and spirituous liquors exclusively.

The legislature, in the passage of such acts, is presumed to be directed and influenced by the public sentiment and wishes of the people asking for special legislation. If this is so, is it reasonable or reconcilable with common sense, to assume that the inhabitants of Holly Springs asked for the passage of an act empowering their mayor and aldermen to disregard the united will of the inhabitants constituting their corporation, giving the

mayor and aldermen the right to make contracts, grant licenses, rights and franchises, to individuals such as *they might select* to be the recipients of their bounty—securing to them *monopolies* and *exclusive privileges* in the sale of spirituous liquors at retail, &c., irrevocable, and for a long term of years?

No such assumption of authority could have been contemplated by the legislature when they passed the act; or by the people of Holly Springs, when they asked for their charter to be amended, making them a city, as has been exercised by their mayor and aldermen in the grant of the license in question.

The idea that the legislature intended to clothe the mayor and aldermen of the city of Holly Springs, by the passage of "section 29," with absolute power in the matter therein legislated upon, or that the inhabitants of the corporation should be at the mercy of their officers, irresponsible to their creators, cannot be tolerated.

There is nothing in the "act of November 19," which shows that there were two thousand inhabitants within the limits of the corporation, at the time of the passage of the act referred to. In the use of the language in section 29, "shall have the exclusive right to grant licenses for the sale of spirituous and vinous liquors *within* the corporate limits of the same," the legislature only intended to exclude the board of county police of Marshall county from the exercise of their legitimate jurisdiction within the limits of the town of Holly Springs, in case it should be found there were not two thousand inhabitants within its corporate limits.

If we are right in our view of this section of the statute, the corporation and the corporate authorities of the city of Holly Springs, as regards the right to issue licenses for the sale of spirituous liquors within its corporate limits, stand precisely in the situation of any incorporated town in the state with a population of two thousand inhabitants, except in this particular: "such licenses may be granted for a period less or more than one year, under such terms and restrictions as may be prescribed." This privilege of issuing the licenses for a period different from the general law is granted by section 29.

This court, in the case of The Planters' Bank v. State of

Mississippi, 6 Sm. & M. Rep., 632, lays down this rule for the construction of statutes: "Statutes are not considered to be repealed by implication, unless the repugnancy between the new provisions and the former statute be plain and unavoidable."

Another well-settled rule is, that all statutes must be construed in connection with previous statutes and laws in relation to the same subject-matter, and that all such are to be taken together, as if they were one law, and that if they can stand together, they will be so construed.

In what particular are the provisions hereinbefore cited, appearing in section 29, antagonistic or repugnant to the general prerequisites to be observed and performed before the issuance of a license to retail vinous and spirituous liquors, as is required by "article 4," pp. 197–8, Revised Code, which are, that the petition must be signed by a majority of the legal voters, residents within the corporate limits of the town in which the liquor is to be sold; that all such petitions, after being presented and filed, shall lie over one month for consideration; and the reception of counter-petitions, before being acted upon, &c.? We are unable to perceive anything that indicates repugnancy.

Then their right to exercise absolute power—a power not specifically granted by the charter—can only be derived by implication. It has been repeatedly held by this and other courts of last resort, that in order to derive a power by implication, *it must* appear that the power thus sought to be implied *is so necessary* to the enjoyment of some specially granted right, that without it that right must fail.

What is the granted right under this section 29, which must fail, unless the mayor and aldermen exercise absolute power, independent of the public will of the inhabitants of the corporation, in the grant of licenses, &c.? We can perceive none.

What right was saved by the grant of license to the plaintiff in error and partners for the term of seven years, giving them the *exclusive right* to sell vinous and spirituous liquors within the corporate limits of the city of Holly Springs? We are at a loss to perceive any.

This exercise of absolute power by the mayor and aldermen

of Holly Springs, in granting the license to plaintiff in error, *et al.*, was not derived by implication. Therefore the issuance of the license in question without observing the prerequisites prescribed in Art. 4, Rev. Code, 197-8, was a plain and palpable violation of their public duty.

They had no power, using the language of Justice Harris in his opinion in the case of The Mayor and Aldermen of the City of Jackson v. James H. Bowman, 39 Miss., "to sell a discretion and authority specially delegated to it, to be used for the public good, and thereby prevent itself from the further exercise of such discretion and authority, from time to time, as the exigencies of the country might demand. It was not in its power, by contract, to divest itself of this public official duty irrevocably for a term of years, for private benefit or local advantage."

The provisions of this license, the contract, and the consideration of the same, are in all respects as objectionable as those in the case of The Mayor and Aldermen of the City of Jackson v. James H. Bowman.

The mayor and aldermen of Holly Springs could not dispense with the prerequisites prescribed by the general act, pp. 197–8, Rev. Code, art. 4, and their action in the grant of the license in question was without authority, in violation of Art. 4, referred to, and therefore void.

Though not authority binding on their successors, the first mayor and aldermen, elected within two months after the passage of the amended charter, November, 1857, in the grant of the license to Phillips, Bradey, and others, construed their powers and their duty to the inhabitants of the corporation correctly. That license, it will be seen, was granted in conformity with the requisitions of "Art. 4, p. 198, Rev. Code."

We are of opinion, that the view of the law applicable to the testimony in the case, taken by the able jurist who presided at the trial in the court below, was correct, and that the instruction objected to was properly given. The judgment should not be disturbed.

Let the judgment be affirmed.