## CLINTON NELSON v. THE PEOPLE.

*Penalties for offenses triable by justices—Petit larceny.*

*It seems* that a circuit judge cannot impose a heavier penalty than a justice of the peace for an offense found on trial to be properly cognizable by the latter only.

Holding an accused person for trial in the circuit court gives that court jurisdiction.

Comp. L., § 7569, authorizing a justice to inflict a year's imprisonment for offenses cognizable in his court, is by implication amended by § 5566 which limits to three months the imprisonment that may be inflicted on persons convicted under ch. 94 of the Revised Statutes of 1846, which gives to justices their criminal jurisdiction.

"Petit larceny" is not an offense now known to the law.

Error to Wayne. Submitted April 2. Decided April 16.

INFORMATION FOR GRAND LARCENY to which respondent pleaded in abatement that he was guilty of "petit larceny" only, and was convicted accordingly, and sentenced to confinement at hard labor for ten months in the Detroit House of Correction.

*Hawley & Firnane* for plaintiff in error.

Attorney General *Otto Kirchner* for The People.

COOLEY, J. Nelson was complained of before a justice of the peace for the larceny of property exceeding in value twenty-five dollars, and on examination by the justice was held for trial in the circuit court. Had the value of the property been found by the justice to be under twenty-five dollars, the justice could not have sent the case to the circuit court, but must have proceeded to try the accused himself. Comp. L., §§ 5526, 7860. An information having been filed against Nelson in the circuit court, he pleaded thereto "guilty of petty

larceny." This plea was informal, but was understood by the prosecution and by the court as a plea of guilty of the non-felonious larceny; that is to say, of the larceny of property of less value than twenty-five dollars; and the court proceeded to sentence him to imprisonment in the Detroit House of Correction for the period of ten months. It is assigned for error in the record that this judgment is excessive.

The general statute provides that larceny of property which shall not exceed in value twenty-five dollars shall be punished by imprisonment in the county jail not more than one year, or by fine not exceeding one hundred dollars, or by both in the discretion of the court. Comp. L., § 7569. This provision was a part of the Revised Statutes of 1846, and under those statutes as well as now, cases of non-felonious larceny might have been tried by a justice of the peace. Two years after those statutes took effect an act was passed which provided that any person convicted under chapter 94 of the statutes—the chapter giving to justices their criminal jurisdiction—may be punished by a fine not exceeding one hundred dollars, or by imprisonment in the county jail not exceeding three months, or both in the discretion of the court. It is not claimed that since this statute a justice of the peace can inflict the punishment of imprisonment for a period exceeding three months, and had Nelson been convicted before a justice of the same offense of which he has now pleaded guilty, three months must have been the maximum imprisonment that could have been imposed. The question before us is, whether the circuit and municipal courts may inflict a greater punishment than a justice is allowed to impose for the same offense.

As Nelson's plea of guilty was accepted, it is to be assumed that the property stolen by him was in fact under twenty-five dollars in value, and that the justice erred when he found the value to be greater. Had he

not committed this error, his duty would have been to try the charge on its merits, and then, as already stated, the imprisonment would have been restricted to three months. But can it be possible that an error of this sort on the preliminary hearing, and which is corrected on the final hearing and before judgment, can subject the accused to four times the punishment he would have been liable to had no such error been committed? It would certainly be extraordinary if that should be found to be the case; and we cannot believe such a construction of the statutes was ever intended, or is admissible.

In *Irvin's Case*, 29 Mich., 43, it was decided that when a criminal prosecution was removed by appeal from a justice to the circuit court, the latter court, on conviction, was limited in the punishment to that which might have been imposed by the justice. The ground of the decision was that by implication of law the restriction upon the punishment which governed the proceedings before the justice must accompany them to their conclusion. It is not easy to understand how the implication can be less forcible when the justice, instead of trying the case, has held the accused to trial in the circuit court for an offense which it turns out was triable before him. Holding the accused to trial undoubtedly gave the circuit court jurisdiction of the case, and it is analogous to the case of a civil action commenced in the circuit court for a demand apparently within the jurisdiction of the circuit court, but which proves on the trial to have been triable by a justice. In those cases the settled rule is, that though the circuit court may proceed to the judgment for the damages found, yet as the case should have been commenced and tried in justice's court, the plaintiff has no claim to costs in the circuit court, but should pay costs to the defendant. In other words, the fact that the circuit court on the face of the pleadings has jurisdiction of the case does not warrant that court in disposing of the case regardless of the jurisdiction which the Constitution and the statutes confer upon

justices' courts, but that the justice's jurisdiction which it turns out ought to have been involved, must be kept in view and will limit the judgment which the circuit court may impose. *Strong v. Daniels*, 3 Mich., 466; *People v. Judge of Ingham Co.*, 38 Mich., 243; *Dikeman v. Harrison*, ante, p. 617.

In analogy to these decisions it would seem that we must hold that the circuit court must have in view in the exercise of its jurisdiction in cases like the present, the judgment which might have been imposed in the inferior court had the trial taken place in that court. When it is plainly the contemplation of the statute that all cases like the present shall be tried in the inferior court, and they only reach the circuit court by appeal, or because of some error of fact in the examining magistrate, the conclusion that the limitation of punishment which is imposed in the justice's court accompanies the case to its conclusion, seems irresistible. And we are of opinion that the act of 1849, Comp. L., § 5566, which restricts the punishment which may be inflicted by the court in which the statute contemplates these cases shall be tried, has the effect to amend by implication the general law previously in existence, under which a greater punishment might have been imposed.

CAMPBELL, C. J., concurred.

MARSTON, J. I concur in the opinion of my brother Cooley in this case in what he says as to the respondent's pleading guilty to petty larceny only. I am unable to concur however upon the other proposition. This case is in my opinion unlike one brought into the circuit by appeal. It may very properly be held there that the jurisdiction of the circuit does not exceed that of the justice. When however there has been an examination before a magistrate upon a charge not within the jurisdiction of a justice of the peace, and the accused waives examination or is bound over for trial in the cir-

cuit, that court in my opinion acquires jurisdiction of the case, as one properly pertaining to and within the exclusive jurisdiction of that court, and the case is no longer subject to or within the statutes relating to the jurisdiction of justices of the peace, but is governed solely by the practice in and statutes relating to the circuit court. Such a view may, as urged upon the argument, work injustice, in that parties accused of crime may be held for trial in the circuit, in cases clearly within the jurisdiction of the justice. There is no statute that may not, with dishonest officials, be perverted and abused. We cannot act upon any such theory. We must presume the contrary, and I think the circuit judge would have no difficulty in properly dealing with any such cases that might thus improperly be sent to that court for trial.

There are other cases where under a contrary view parties would in my opinion be very inadequately punished, if it could be no greater than that which a justice is authorized to inflict. Take one case in illustration of many frequently arising. A party is tried in the circuit for an assault with intent to commit the crime of murder. The jury having doubts as to the intention with which the assault was made and injuries inflicted, find the accused guilty of an assault and battery. To limit the punishment in many such cases to a fine, and imprisonment for three months, would be but a mere mockery of justice. I cannot think that the Legislature so intended. And so far as I know such has not been the practice in the several circuit courts in this State.

In my opinion the sentence of the Circuit Court was correct and should be affirmed.

GRAVES, J. Nelson was charged by information under the statute with having committed the offense of larceny of certain property of the value of $35. On arraignment he pleaded in abatement, but subsequently on leave of the court withdrew that defense and pleaded "guilty

to petit larceny only." On that plea the court convicted him "of the crime of petit larceny" and sentenced him to be confined at hard labor in the House of Correction for ten months and the sentence is now being carried out. The cause comes up on writ of error and one ground alleged is that the conviction was not for any offense covered by the information. The offense Nelson confessed and of which he was convicted is described in the plea and in the finding and judgment as "petit larceny" and nothing else, and it is conceded that this expression does not import or indicate the specific offense laid in the information. It is properly admitted that it signifies something different and the expression is said to have been used to denote that the property in the information was stolen by Nelson but did not exceed $25 in value. And no doubt this, as matter of fact, is a correct explanation. But can it be held that the language has the certain and proper legal sense to support the judgment of the court?

In case of conviction of crime the record ought to show upon its face with reasonable certainty that the defendant is held for an offense which our laws recognize and which is covered by the formal accusation.

If the offense is one to which the law has assigned technical descriptive terms to express it, these terms should appear; and in other cases the facts descriptive of the crime should be introduced. But if this course is disregarded and the "offense" is expressed by language signifying a crime which is unknown to our law though formerly recognized in the common law of England, the case is wanting in legal certainty and the defect cannot be obviated by argument or exposition.

The governing principles have been often illustrated. *Rex v. Horne*, 2 Cowp., 672; *Haney v. State*, 2 Texas Court of Appeals 504, and *Merwin v. The People*, 26 Mich., 298, are instructive cases. See also Arch. Crim. Prac., 41 et seq.; 2 Hawkins' P. C., 622. Applying these principles here and the record makes out that Nelson

was not found guilty of any crime covered by the information against him, but of something our laws do not recognize as a crime at all.   "Petit larceny," though once the definitive appellation of a class of common law larcenies, has no place in our code, and we have no such classification or distinction as the term calls for. Indeed Parliament has so changed the *common law that* the term is now obsolete as a descriptive one in legal proceedings against offenders even in England.   4 Bl. Com., 229, 237; 4 Stephens' Com., 158, 159; 2 Broom & Had., (Amer. ed.), 513, n. *b.*; Arch. Crim. Prac. (5th Amer. and 10th Lond. ed.), 168, marg.; *Drennan v. The People,* 10 Mich., 169.

The other objections made against the judgment appear to me to require no notice, and I reserve my opinion upon them.   For the error in the conviction and judgment there should be a reversal, and not being fully satisfied that The People are entitled to renew the prosecution in view of the proceedings which have already taken place (*Ex parte Lange,* 18 Wall., 163), I think a new trial should not be ordered, and that the plaintiff in error should be discharged.