EDWIN EDDY ET AL. v. THE TOWNSHIP OF LEE ET AL.

*Constitutional law—Taxes—Injunction to restrain collection—*
*Authority of Legislature to deprive circuit court of*
*jurisdiction.*

1. The Legislature has the constitutional authority, where it has provided a plain, adequate, and complete remedy at law to recover back taxes illegally assessed and collected, to take away the remedy by injunction to restrain their collection.

2. A decree holding taxes "illegal and void" destroys the statutory lien upon the land, and effectually removes the cloud thereby created; and to accomplish this an injunction is not necessary, either before or after such decree.

Appeal from Midland. (Hart, J.)  Argued October 26, 1888.  Decided November 28, 1888.

Bill to decree taxes illegal and void, and to restrain their collection. Complainants appeal from decree dismissing bill on demurrer. Decree reversed, with leave to answer. The facts are stated in the opinion.

*Camp & Brooks* (*W. G. Gage*, of counsel), for complainants.

*M. H. Stanford* and *Gordon & Fales*, for defendants.

CHAMPLIN, J. On February 1, 1887, the complainants filed their bill of complaint in the circuit court for the county of Midland, in chancery, to enjoin the collection of certain taxes assessed and levied upon the general tax roll of the township of Lee for the year 1886. They state that they are possessed and jointly seized in fee of the lands assessed, and that, so far as their lands are assessed, the following is a transcript of said roll, viz.:

| DESCRIPTION. | Section. | Town. | Range. | Valuation. | State Tax. | County Tax. | Town Tax. | Highway Money Tax. | School Tax. | Highway Tax. | Bridge Tax. | R. A. R. D. Tax. | Total Tax. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N ½ ...... 2 | 19 | 14 N | 1 W | $700 | $0 72 | $5 60 | $6 86 | $3 50 | $15 54 | $3 50 | $9 38 | $5 21 | $50 31 |
| W ½ of S E ¼... 2 | 19 | 14 N | 1 W | 250 | 26 | 2 00 | 2 45 | 1 25 | 5 55 | 1 25 | 3 36 | 1 87 | 17 99 |
| N ½ of N E ¼... 2 | 30 | 14 N | 1 W | 250 | 26 | 2 00 | 2 45 | 1 25 | 5 55 | 1 25 | 3 36 | 1 87 | 17 99 |
| N E ¼ of N W ¼... 3 | 30 | 14 N | 1 W | 150 | 16 | 1 20 | 1 47 | 75 | 3 33 | 75 | 2 01 | 1 12 | 10 78 |
| S ½ of N E ¼... 3 | 28 | 14 N | 1 W | 1,500 | 1 55 | 12 00 | 14 70 | 7 50 | 25 50 | 7 50 | 20 10 | 11 18 | 100 03 |
| S ¼ of N. W ¼... 3 | 28 | 14 N | 1 W | 1,500 | 1 55 | 12 00 | 14 70 | 7 50 | 25 50 | 7 50 | 20 10 | 11 18 | 100 03 |
| S E ¼ ...... 3 | 28 | 14 N | 1 W | 3,000 | 3 09 | 24 00 | 25 40 | 15 00 | 51 00 | 15 00 | 40 20 | 22 35 | 200 04 |
| N ½ of S W ¼... 3 | 28 | 14 N | 1 W | 1,500 | 1 55 | 12 00 | 14 70 | 7 50 | 25 50 | 7 50 | 20 10 | 11 18 | 100 03 |
| S E ¼ of S W ¼... 3 | 28 | 14 N | 1 W | 150 | 15 | 1 20 | 1 47 | 75 | 2 55 | 75 | 2 01 | 1 12 | 10 00 |
| S E ¼ of S W ¼... 2 | 31 | 14 N | 1 W | 600 | 62 | 4 80 | 5 88 | 3 00 | 13 32 | 3 00 | 8 04 | ---- | 38 66 |
| S ½ of S W ¼... 4 | 34 | 14 N | 1 W | 250 | 26 | 2 00 | 2 45 | 1 25 | 2 98 | 1 25 | 3 36 | ---- | 13 55 |
| | | | | | | | | | | | | | $659 41 |

They state that each and every of the several taxes so levied and assessed upon each parcel are excessive, illegal, null, and void, for the reason that the board of supervisors of said county did not at either of their sessions in 1886 equalize the annual assessment rolls of the several townships in said county for the year 1886, but wholly neglected so to do. They further state that—

"Each and every of the several taxes are illegal, null, and void, for the further and additional reason that said board of supervisors did not in the year 1886, at the June session of said board, or at any other session, keep an official record of their proceedings, duly signed by the clerk and chairman of said board, as required by statute, except of the proceedings had on the last day of each of such sessions, showing what action, if any, said board took to equalize the annual assessment rolls of the several townships in said county, nor what action, if any, they took to determine what amount or sum of money, if any, should be levied and assessed upon the taxable property of said township of Lee, for State, county, school, and township, or other purposes, in the year 1886; nor does it appear upon any record of the proceedings of said board at their annual session in the year 1886, or at any special or adjourned session of said board, duly signed by the chairman and clerk of said board, that said board determined that any sum whatever should be levied and assessed upon the taxable property of said county for State or county purposes, or that said board determined that any sum whatever should be levied and assessed upon the taxable property of said township of Lee for township, school, highway, or other purposes.

"Wherefore your orators charge that said board of supervisors did not, in the year 1886, at any regular, special, or adjourned session, determine what amount or sum of money, or that any amount or sum of money, should be levied and assessed in said township of Lee for State, county, school, highway, or township purposes, and did not determine that any sum of money whatever should be levied and assessed upon the taxable property of said county for State or county purposes, and did not determine and direct that any sum or sums of money should be levied and assessed upon the taxable property of said township of Lee for township, school, highway, or other purposes.

"And your orators further show that the said board of supervisors, at the annual session of said board, in October, 1886, assumed to determine that the sum of $24,698.88 should be raised by taxation upon the taxable property of said county for certain purposes, and that among the other purposes designated and constituting a part of said sum is the sum of $7,000 for incidental expenses; that a part of said sum of $7,000 was assumed to be apportioned

to the township of Lee, and that the county taxes assessed against your orators' said lands is made up in part of a portion of said sum; and your orators expressly charge that said board had no power or authority to raise any sum whatever for incidental expenses; and your orators say that they are informed and believe, and so charge the fact to be, that in truth and in fact said board determined to raise said sum of $7,000 for the construction of roads and bridges in said county, and for the purpose and with the intent of concealing the true purpose and intent of their action said board designated said sum as for incidental expenses. Wherefore your orators say that so much of said county tax levied for incidental expenses is wholly illegal and void." They further state that the township, school, highway, and bridge taxes are void because they are not certified by the township clerk to the supervisor, or to the board of supervisors, as he was directed to do by the law, and no such certified copy of the clerk was before the board of supervisors, and they never took any action upon such certificate, and they never authorized or directed the supervisor of the township of Lee to levy or assess any sum for township, school, highway, bridge, or other purposes.

The school taxes, other than the one mill tax, are alleged to be void, for the reason that the memorandum to the supervisor by the township clerk and by the supervisor, laid before the board, did not show that any sum was voted by the electors of the district for any specific purpose, but that it simply appeared from such memorandum that the sum of $350 was to be raised in school-district No. 2 for school purposes in said district, without indicating the object or purpose of said tax, and that the tax in district No. 3 is illegal and void for the same reason.

They state that no bridge tax was ever authorized to be levied by the electors of the township at their annual meeting in 1886, or at any other time, and that said tax was levied by the supervisor without warrant or authority of law.

That the whole of said tax levied and assessed upon your orators' said lands, and designated on said roll as "R. A. R. D.", is illegal and void, for the further and additional reason that said designation does not indicate any particular tax whatever, that it is wholly indefinite and uncertain, and does not inform complainants what

tax, if any, is intended to be specified and described; and they aver that said supervisor was not authorized or empowered to levy upon their said lands any tax whatever which could be designated as "R. A. R. D.".

That they are informed and believe, and so charge the fact to be, that all the township taxes, highway taxes, and money highway taxes, bridge taxes, and "R. A. R. D." taxes, levied and assessed upon their said lands, are illegal and void, for the further and additional reason that neither of said taxes was at any time voted or authorized to be raised by the electors of said township, nor by the township board of said township, nor by any other authority, and that each and every of said taxes levied and assessed in part upon their said lands were wholly unauthorized by law, and are illegal and void; that each and every of said taxes are illegal, null, and void, and that they are not legally or equitably required to pay any portion thereof, as they verily believe; and yet they say that, if this honorable court shall determine that any portion of said taxes are legal and just, they hereby tender payment of so much and of such part of said taxes as they ought in equity and good conscience to pay.

And they further state that the supervisor of said township, after spreading upon said assumed annual tax roll the taxes aforesaid, and a part thereof upon their said lands, annexed thereto his warrant, authorizing, directing, and empowering the treasurer of said township to collect the several amounts appearing thereon, and among others the amounts assessed and levied upon their lands as aforesaid; that said roll is now in the hands of said treasurer for collection, together with the warrant attached thereto; that said treasurer claims that said roll is a valid roll, and the taxes appearing thereon are legal and valid, and that it is his duty to enforce the collection of the same, if necessary, by distress and sale of their personal property; that said roll. with the several taxes appearing thereon, assessed against their said lands, constitute a cloud upon their title to said lands, which ought in equity and good conscience to be removed by a decree of this court; and that they have no ample and sufficient remedy at law.

The township and school-districts demurred to the bill,

and it was dismissed as to them by the decree of the circuit court.

In support of the demurrer it is urged that the remedy by injunction is taken away by section 107 of Act No. 153, Laws of 1885, which reads as follows:

"No injunction shall issue to stay proceedings for the assessment or collection of taxes under this act." .

The taxes alleged in the bill were assessed under this act, and the bill of complaint was filed to obtain an injunction against the collection of such taxes. If, therefore, this provision of the law is valid, this suit cannot be sustained, so far as it asks for relief by injunction.

Article 6, § 8, of the Constitution, provides that—

"The circuit courts shall have original jurisdiction in all matters, civil and criminal, not excepted in this Constitution, and not prohibited by law. * * * They shall also have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,* and other writs necessary to carry into effect their orders, judgments, and decrees."

It is insisted on behalf of complainants that, the Constitution having granted to the circuit courts the power to issue the writ of injunction, the Legislature cannot deprive them of that power when it is necessary to issue it in the exercise of their ordinary jurisdiction; that it is the exercise of the ordinary jurisdiction of courts of chancery to remove clouds from title, and that the restraining of the collection of the tax is incident to the relief prayed, as the validity of the lien which constitutes the cloud depends upon the validity of the tax. The prayer of the bill is—

"That the taxes may be held and decreed to be illegal and void, and J. S. Bisbing, treasurer of the township of Lee, be enjoined and restrained from collecting by distress any of the taxes assessed upon said roll against your

orators' said lands, or any portion thereof, and from returning said lands of your orators to the county treasurer of said county as delinquent for non-payment of said taxes, or any portion thereof;"—

And for costs. If the first prayer be granted, and the tax be held illegal and void, the lien will be destroyed, and the cloud created thereby effectually removed. To accomplish this it is not necessary that an injunction should issue, either before or after decree. This power of the court of chancery is not interfered with by the provision of the law inhibiting an injunction to restrain the collection of the tax.

While it is not competent for the Legislature to deprive circuit courts of their rightful jurisdiction and authority secured to or conferred upon them by the Constitution, yet the article above quoted shows that the jurisdiction thus conferred is subject to legislative exceptions. *People v. Hurst*, 41 Mich. 334 (1 N. W. Rep. 1027).

I have no doubt that the Legislature has the constitutional authority, where it has provided a plain, adequate, and complete remedy at law to recover back taxes illegally assessed and collected, to take away the remedy by injunction to restrain their collection.

It has been the law in this State for many years that no replevin should lie or be maintained to recover the possession of property belonging to the tax-payer, distrained by the tax collector, to enforce payment of the taxes. The law requires in all cases, before the party is entitled to have the writ of replevin executed, that he, or some person in his behalf, shall make affidavit that the property has not been taken for any tax, assessment, or fine levied by virtue of any law of this State; and it has never been suggested that this law was unconstitutional. The object of that law, as it is of this, is to enable the

government to collect its revenues without delay. The obligations of the government must be met promptly, and it is better that the citizen should resort to his common-law remedies to secure his rights, so far as a mere payment of what he claims may be an illegal tax is concerned, than the government should be embarrassed in the collection of revenues necessary to defray its expenditures.

"Courts have frequently remarked upon the impossibility of the government calculating with any certainty upon its revenues, if the collection of taxes was subject to be arrested in every instance in which a tax-payer or tax collector could make out *prima facie* a technical case for arresting such collection, and it is justly said to be much better to let the individual pay to the government the demands it makes upon him, and, if he considers them in whole or in part illegal, apply for the refunding of the money, with interest afterwards." Cooley, Tax'n (2d ed.), 762.

This same learned jurist remarks that—

"So serious have been the embarrassments by an improvident employment of the writ of injunction, and other obstructive process, that the legislature has in some cases deemed it necessary to interpose and forbid the issue of injunction, replevin, or other specified writs, the tendency of which would be to embarrass collections."

In support of the general doctrine see note 2, p. 762, Cooley, Tax'n (2d ed.). The case of *Snyder v. Marks*, 109 U. S. 189 (3 Sup. Ct. Rep. 157), is in point.

The statutes of the United States provide:

"And no suit for the purpose of restraining the assessment or collection of tax shall be maintained in any court." 14 Stat. at Large, 475, § 10.

The bill was filed to restrain the collection of an assessment upon the business of the complainant, as a manufacturer of tobacco, under the internal revenue laws with respect to such business. The court held that the rem-

edy by injunction to restrain the collection of the tax was forbidden. It was claimed in that suit that the "tax" which the statute referred to as forbidding relief by injunction meant a legal tax, and that which was sought to be restrained was illegal and void. But the court, after referring to the construction to be placed upon the statutes, said:

"Hence when, on the addition to the section, a 'tax' was spoken of, it meant that which is in a condition to be collected as a tax, and is claimed by the proper public officers to be a tax, although, on the other side, it is alleged to have been erroneously or illegally assessed. It has no other meaning in section 3224. There is therefore no force in the suggestion that section 3224, in speaking of a 'tax,' means only a legal tax, and that an illegal tax is not a tax, and so does not fall within the inhibition of the statute, and the collection of it may be restrained."

See also *U. S. v. Black,* 11 Blatchf. 543; *Alkan v. Bean,* 8 Biss. 83.

No better illustration of the wisdom of the Legislature in denying the use of the writ of injunction to restrain the collection of a tax can be given than that afforded by the case under consideration. If the tax is illegal and void for the neglect of the board of supervisors to equalize the assessment rolls, and to apportion the taxes, such illegality affects all the tax rolls in the county, and the whole State, county, township, and highway taxes in the county may be enjoined from collection,— the State deprived of its necessary share to meet the appropriations for civil, educational, and administrative purposes, the county, of its necessary means to support its poor, enforce the criminal laws, and pay its obligations, and the townships and school-districts would be left with no means to defray the ordinary expenses of such public *quasi* corporations.

The statute, while prohibiting the issue of the writ of

injunction to restrain the collection of the tax, has by section 42 of the tax law provided that the tax-payer—

"May pay, under protest, to the township treasurer, specifying at the time, in writing signed by him, the grounds of such protest; and such treasurer shall minute the fact of such protest on the tax roll, and in the receipt given. The person paying under such protest may, within thirty days, and not afterwards, sue the township for the amount paid, and recover, if the tax is shown to be illegal for the reasons specified in such protest."

It is not necessary for us in this case to decide whether such remedy specified by the statute is exclusive of all other common-law remedies. It is enough for our present purpose to know that the party paying the illegal exaction has a remedy at law for recovering it back. Were the whole tax levy in the county illegal, and every tax-payer should resort to the remedy given by this statute to recover it, the wheels of government, State, county, and town, could not be stopped for want of funds; for, although judgments might be obtained to recover back the money paid, yet the sums to be collected to pay such judgments would have to enter into the levy and tax roll of the next year, and be collected in the usual way before they could be repaid. Act No. 63, Laws of 1883.

In the case at bar the record shows that a preliminary injunction was issued, but afterwards dissolved by the circuit court, and on hearing on the demurrer complainants' bill was dismissed as to the demurring parties. We think the circuit judge was right in dissolving the injunction, for the reason that the law prohibited him from granting it in the first instance. The bill, however, shows a case for equitable relief to set aside the lien created by the law, if it should appear at the final hearing that the tax is illegal for reasons stated in the bill, and for this purpose it was not demurrable. The defend-

:ants should have an opportunity of putting the facts in issue.

The decree dismissing the bill will be reversed, and the demurrer overruled, with leave to answer in 20 days after notice of *remittitur* to the court below. Complainants will recover costs, to be taxed, of this Court. The costs of the court below will abide the event of the final decree.

The other Justices concurred.