CITY OF FARGO *vs.* D. C. ROSS, *County Treasurer.*

**Statute—Amendment.**

When a particular section of a statute is amended by retaining some of the provisions of the original section without change, and complete in themselves, and omitting other provisions which in no way affect the parts retained, and there is no express repeal of the original section, the provisions of the original section which are retained will not be deemed to have been repealed and re-enacted, but to have been continued in force from their first enactment, with such modifications as have been made by subsequent acts; and the omitted portions only will be deemed to be abrogated and repealed by the amendment.

**Statute—Repeal—County Treasurers.**

Construing chapter 149, Laws 1901, which in terms amends section 2496, Rev. Codes 1899, which section was enacted as a part of chapter 102, Laws 1897, and in part provides for the payment by county treasurers of penalties and interest collected on city taxes to city treasurers and in part to the county treasurers' commissions upon such collections, it is *held* that the amendatory act only repeals that part of said section which authorizes county treasurers to retain a commission, and that the remaining portions of said section were in no way affected by the amendment.

**Payment of Penalties.**

*Held,* further, that said amendatory act did not, by implication, repeal section 1260, Rev. Codes 1899, which was enacted in chapter 4, Laws 1899, and modifies section 2496, and provides that all interest and penalties, except on special assessments, shall belong to the counties collecting them.

Appeal from District Court, Cass County; *Pollock, J.*

Action by the city of Fargo against D. C. Ross, as treasurer of Cass county. Judgment for plaintiff, and defendant appeals. Reversed.

*Newton & Smith* and *George W. Newton,* for appellant.

*M. A. Hildreth,* for respondent.

YOUNG, J. On the 4th day of February, 1902, an alternative writ of mandamus was issued by the district court of Cass county, directed to the defendant, the treasurer of said county, and commanding him to pay over to the city treasurer of the city of Fargo all interest and penalties collected on city taxes since July 1, 1901, or to show cause why he had not done so. The writ was based upon an affidavit of H. F. Miller, the city attorney of said city, in which it is alleged that there is a large sum of money in the hands of the defendant, belonging to the city of Fargo, which the defendant neglects and refuses to account for or turn over to C. H. Mitchell, the treasurer of said city, and the legal and proper person to whom

such money should be paid under the law; that said city, through its said treasurer, C. H. Mitchell, has demanded of the defendant the payment to him, as such treasurer, of all interest and penalty collected on city taxes after the 1st day of July, 1901, "and that he made such demand in pursuance of and in conformity to section 2496 of the Revised Codes of this state, as amended at the last session of the legislature, which said amendment was approved March 7, 1901"; that in reply to said demand the defendant refused to account for or turn over to the said C. H. Mitchell the penalty and interest collected on city taxes since July 1, 1901. The demand of the city treasurer and refusal of the county treasurer are in writing, and are attached to the affidavit. The demand of the city is for "all interest and penalty collected on city taxes since the 1st day of July, 1901," and the written demand stated that it is made under section 2496, Rev. Codes, as amended in 1901. The county treasurer, acting on the advice of the county attorney, refused to comply with such demand, and in writing declined "to turn over any money collected from any interest and penalty accrued on taxes other than penalties on specials which has been turned over to the city at each monthly settlement." Upon the return day, the defendant interposed a demurrer upon the ground that the facts set forth did not constitute a cause of action, or show that the defendant is entitled to the relief asked, or any other relief. The demurrer was overruled by the trial court, and judgment entered directing the issuance of a peremptory writ of mandamus requiring the defendant to turn over to the city treasurer all the interest and penalty collected on city taxes since the 1st day of July, 1901. The defendant filed an undertaking to stay execution of the judgment, and appealed from the judgment.

The question presented is whether the city or the county is entitled to the interest and penalties collected upon city taxes since July 1, 1901, and it is agreed that this question turns entirely upon the effect to be given to the amendatory act (chapter 149, Laws 1901), which went into effect on July 1, 1901. If that act operated to repeal sections 2496 and 1260, Rev. Codes 1899, it is agreed that the interest and penalty belongs to the city; otherwise not. Section 2496 was enacted as a part of chapter 102, Laws 1897, and reads as follows: "The county treasurer of such county shall thereupon collect such taxes, together with the interest and penalty thereon, if any, in the same manner as the general taxes for that year, and shall pay over to the city treasurer of such city all sums so collected as fast as collected, and shall take the city treasurer's voucher therefor; *and the county treasurer shall retain from the moneys collected for each city, as a fee to be turned over to the county, one per cent. of the amount so collected.*" Section 1260 was enacted as chapter 4, Laws 1899, and is as follows: "All penalty and interest collected on taxes shall belong to the county and become a part of the general fund, or such other fund as the county commissioners may direct;

except the penalty and interest collected on special assessments due to cities, and all such penalties and interest shall be paid to the city thereunto entitled." In 1901, section 2496, *supra,* was amended by chapter 149, Laws 1901, which is entitled "An act to amend section 2496 of the Revised Codes of 1899, relating to the duty of county treasurer in the collection of city taxes," and reads as follows: "Section 1. That section 2496, of the Revised Codes of 1899, be amended to read as follows: Section 2496. The county treasurer of such county shall thereupon collect such taxes, together with the interest and penalty thereon, if any, in the same manner as the general taxes for that year, and shall pay over to the city treasurer of such city all sums so collected, as fast as collected, and shall take the city treasurer's vouchers therefor." It will be seen that section 2496, first above quoted, as it originally stood, and prior to its modification by section 1260, *supra,* required that all sums collected by county treasurers, including interest and penalties, should be turned over to the city, except the 1 per cent. commission of the county treasurer. It will also be noted that section 2496 was modified by Laws 1899, c. 4, § 1260, *supra,* which latter section gave the interest and penalties on all taxes to the county, except on special assessments, and provided that interest and penalty on special assessments was to be turned over to the city. This was the condition of the law when the amendatory act (chapter 149, Laws 1901) took effect upon the 1st day of July, 1901; in other words, counties were entitled to interest and penalties, except upon special assessments.

It is conceded that this case turns upon the effect to be given to this amendatory statute, and that, independent of it, the city had no claim against the county. It is the county's contention that the amendatory act had no further or other effect than to repeal and abrogate that part of section 2496, *supra,* relating to the county treasurer's commission, which was omitted in the amendatory act; which omitted part, for convenience of reference, we have italicized. The respondent's counsel contend, on the other hand, that section 2496 was wholly repealed by the amendatory act, and that section 1260 was repealed by implication to the extent that it conflicts with section 2496, as amended. As an indisputable conclusion from these assumptions, counsel for the city contends that the right of the city to interest and penalties is to be measured by the amendatory act entirely, and without regard to any other or pre-existing provisions, and that in this view the city is entitled not only to the interest and penalties upon special assessments, but also to interest and penalties upon all city taxes. The trial court agreed with this contention, and, in effect, held that both sections 2496 and 1260, *supra,* were repealed by the amendatory act (chapter 149, Laws 1901), and that the right of the city is governed by the last-named act. We are unable to agree with this conclusion, and for reasons which to us appear entirely convincing. In the first place, chapter 149, Laws 1901, con-

tained no express repeal, either of section 1260 or section 2496. On the contrary, section 2496 was merely amended by it, and it was amended not by introducing any new provisions, or provisions repugnant to the provisions of said section or to section 1260. The section, as amended, merely omits the provision relating to the county treasurer's commission. As to the other portions of the original section, no change whatever was made, even to the extent of a word or syllable. The legal effect of the amendatory act, in our opinion, was merely to repeal or abrogate the part omitted. The other parts of the section were left intact, and, under well-settled rules of statutory construction, they continued in full force, and with the same legal effect, as though no amendment had been made. The fact that those portions were republished at length in obedience to the constitutional provision requiring such publication when an amendment of an existing statute is to be effected is not important in determining whether such portions were repealed, and again enacted by the amendatory act. The result of an amendment effected under this constitutional provision is not, in legal effect, different from that which could have been accomplished before the provision existed, by merely striking out the portion desired to be omitted. If, in this case, that course had been pursued, and the provision relating to the county treasurer's commission had been stricken out,—as it might have been under the old system of amending,—no one, we think, would contend that the other portions of the section, which relate to interest and penalties, had been affected in any way whatever. The decision of all courts of last resort to which our attention has been called are in harmony with the views above expressed. In *Ely* v. *Holton*, 15 N. Y. 595, the court said: "The form in which amendments, both of the Code and of the Revised Statutes, have generally been made, by declaring that particular sections shall be amended so as to read in a given way, was adopted for the purpose of adjusting them to the original enactments, so that when the system should, after repeated amendments, become complete, the different parts might be put together without further revision, and thus form a perfect code. The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts, or the changed portions, are not to be taken to have been the law at any time prior to the passage of the amended act. * * * The portions of the section which are repealed are to be considered as having been the law from the time they were first enacted, and the new provisions are to be understood as enacted at the time the amended act took effect." Later the same court, in *Moore* v. *Mausert*, 49 N. Y. 332, said: "In *Ely* v. *Holton*, 15 N. Y. 595, it was decided by this court that the effect of an amendment of a statute made by a subsequent statute declaring that such statute shall be amended so as to read as follows, retaining a part of the statute amended, and incorporating therein new provisions, was not

to repeal the part retained, and re-enact the same, but that such part of the statute continued in force from the first enactment, and that the new provisions incorporated became operative from the time the amendatory statute took effect. It would follow that, where certain provisions of the original statute were omitted from the amendatory statute, such provisions were abrogated, and ceased to form any part of the statute, after such time." In *People* v. *Board of City Assessors of Brooklyn,* 84 N. Y. 610, it was held that the effect of an amendment such as we are considering was to repeal the portion of the act omitted from the act as amended. The views of the supreme court of New York, as above expressed in *Ely* v. *Holton,* were quoted and approved in *Railroad Co.* v. *Shakelford,* 63 Cal. 261. In *State* v. *Herzog,* 25 Minn. 490, the court, in considering the effect of an act amending a certain section of a statute which retained certain portions of the original section, said that, as to the parts retained, "the original section is not repealed, abrogated, changed, or amended, but simply preserved and continued; for there never has been a moment of time since its adoption when the rule of law announced by it did not exist." In *Gordon* v. *People,* 44 Mich. 485, 7 N. W. Rep. 69, the court, in considering the effect of amendments effected under a constitutional provision like our own, said: "The constitutional provision requiring amendments to be made by setting out the whole section as amended was not intended to make any different rule as to the effect of such amendments. So far as the section is changed, it must receive a new operation, but so far as it is not changed it would be dangerous to hold that the merely nominal re-enactment would have the effect of disturbing the whole body of statutes in *pari materia* which had been passed since its first enactment. There must be something in the nature of the new legislation to show such an intent with reasonable clearness before an implied repeal can be recognized. Repeals by implication should not be established without satisfactory reason to believe such was the legislative will." The same principle is also applicable to repeals. In *Lumber Co.* v. *Lee,* 7 N. D. 135, 73 N. W. Rep. 430, BARTHOLOMEW, J., speaking for the court, said: "It is a well-settled principle of law that where a statute is repealed, and the repealing statute, which goes into effect the moment the former is repealed, contains provisions identical, or practically identical, with those in the statute which is repealed, such provisions are not to be regarded as repealed, but rather as continuing in force without intermission. *Steamship Co.* v. *Joliffe,* 2 Wall. 450, 17 L. Ed. 805; *Wright* v. *Oakley,* 5 Metc. (Mass.) 406." See, also, *Com.* v. *Herrick,* 6 Cush. 465; Suth. St. Const., § 133; and End. Interp. St. §§ 195, 196, and cases cited, to the same effect. Section 1260, which admittedly was the governing statute when the amendatory act took effect, is not referred to by it in any way, and the amendatory act only purports to amend section 2496, and as to that section the entire scope of the amendment is confined to the matter of the county treasurer's commission.

This is apparently all the change the legislature desired to make. That part was abrogated. The other portions remained untouched and unaffected by the fact that they were republished. The amendment, therefore, gave to the portions retained no force or effect further than existed prior to the amendment. The operation of that section had been modified by the subsequent passage of section 1260, which latter section gave the interest and penalties on city taxes to counties; and the amendment of 1901, not being a repeal and reenactment of section 2496, the city can claim no new or further right to interest and penalties than it had prior to the amendatory act.

The judgment of the district court is reversed. All concur.